## 11831

### CROSLAND *ET AL. v.* HUNSUCKER *ET AL.*

#### (129 S. E., 199)

1. INSURANCE—IN ACTION FOR PREMIUMS ON FIRE INSURANCE POLICY,
EXCLUSION OF EVIDENCE AS TO TRADE USAGE AND CUSTOM HELD
ERROR.—In action by fire insurance agents to recover premiums
on policies which they had issued in renewal of former policies, it
was error to exclude evidence of trade usage or custom of agents
to issue such policies at expiration of prior policies.

2. APPEAL AND ERROR—ADMISSION OF IRRELEVANT TESTIMONY IN ACTION
FOR INSURANCE PREMIUMS HELD HARMLESS.—In action by fire in-
surance agents for premiums on renewal policies, issued by them
to purchasers of property which they had previously kept insured,
admission of testimony by one defendant as to his plans when he
bought business involved, though irrelevant, *held* harmless.

3. EVIDENCE—RECEIPT OF SECONDARY EVIDENCE AS TO CONTENTS OF
STATEMENT IN ACTION FOR INSURANCE PREMIUMS, WITHOUT NOTICE
OF INTENT TO INTRODUCE IT, HELD NOT ERROR; WITNESS HAVING TES-
TIFIED TO SEARCH FOR AND INABILITY TO FIND MISSING PAPER.—Where
defendants, sued for premiums on renewal fire insurance policies,
denied acceptance of such policies, it was not error to admit testi-
mony by one of them as to alleged statements which he had re-
ceived from plaintiffs containing notice that unless premiums were
paid policies would be canceled, notwithstanding no notice of in-
tent to introduce secondary evidence had been made; witness hav-
ing testified that he had searched for missing paper and could not
find it.

4. TRIAL—INSTRUCTION AS TO RIGHT TO RECOVER PREMIUMS ON RENEWAL
FIRE INSURANCE POLICY HELD ERRONEOUS, THOUGH AFFIRMATIVE
REJECTION OF POLICIES NOT NECESSARY TO AVOIDANCE OF LIABILITY.—
In action for premiums on renewal fire insurance policies, which
had been issued by plaintiffs' agents and sent to insured with
statement of amount due, it was error for Court to use as illustra-
tion former practice of newspapers and magazines in continuing
to send their publications after subscriptions had expired, and then
attempting to hold recipients for subscription price, though in-
sured were not, as matter of law, required to affirmatively reject
policies within reasonable time in order to avoid liability for
premiums.

5. TRIAL—INSTRUCTIONS IN ACTION FOR PREMIUMS ON RENEWAL FIRE INSURANCE POLICIES HELD TO PROPERLY SUBMIT QUESTIONS OF FACT AS TO NECESSITY FOR AFFIRMATIVE REJECTION OF POLICIES AND AS TO BUSINESS CUSTOM.—In action for premiums on renewal fire insurance policies, instructions, submitting questions whether affirmative rejection of policies was necessary to avoidance of liability for premiums, and whether defendants were bound by alleged prevailing custom in matter of issuing such policies, *held* to involve questions of fact, and were not erroneous.

Before MEMMINGER, J., Marlboro, May, 1924. Reversed and new trial granted.

Action by T. C. Crosland and J. W. Tyson against M. R. Hunsucker and W. R. English. Judgment for defendants and plaintiffs appeal.

The following are exceptions I to IV referred to but not contained in the opinion:

"I. It is respectfully submitted that the presiding Judge committed error in refusing to allow the witness, J. W. Tyson, to testify as to the universal custom in regard to issuing fire insurance policies at the expiration of another policy, for the reason that the question was admissible and competent, and that the testimony should have gone to the jury for the consideration of the jury.

"II. It is respectfully submitted that the presiding Judge committed error after the witness, J. W. Tyson, had been examined and cross-examined in not allowing the witness to answer the questions as to the custom of issuing renewal insurance policies, for the reason that his testimony was competent and admissible and relevant.

"III. It is respectfully submitted that the presiding Judge committed error in permitting the defendant, M. R. Hunsucker, over objection of counsel for plaintiff, to testify as to what his plans were when he bought out the John Lewis business. It being respectfully submitted that this testimony was irrelevant and prejudicial to plaintiffs' interest, particularly when the plans of defendants were not known to the plaintiffs at the time the insurance was issued.

"IV. It is respectfully submitted that the presiding Judge committed error in permitting the witness, W. R. English, to testify as to the contents of alleged statements, which the witness claimed he had received from the plaintiff, for the reason that there was no notice of intention to offer secondary evidence, and in the absence of the original paper the best secondary evidence possible would be relied upon, and the best secondary evidence of the letter or written statement would be the carbon copy of some of the records from which such statements were made, and no notice of intention to produce secondary evidence was ever served."

*Mr. J. K. Owens,* for appellants, cites: *Usages of trade implied in contracts:* 12 Cyc., 1066; 104 S. C., 439; 111 S. C., 1. *Judge not to charge on facts:* Const. of 1895, Art. 5, Sec. 26; 76 S. C., 97; 80 S. C., 531; 51 S. C., 453.

*Mr. T. I. Rogers* for respondents.

April 9, 1925.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE R. O. PURDY.

This is an action for the recovery of $157.50 for premiums on two fire insurance policies issued through the agency of the plaintiffs. The case was tried before Hon. R. W. Memminger and a jury, and resulted in a verdict for the defendants.

The defendants purchased a stock of goods and arranged with the plaintiffs to continue the insurance. When the policies expired, the plaintiffs said that they renewed them and mailed them to the defendants. The defendants say that they got only one policy. The defendant English was, it appears, the manager of the business, and he said when he got the policy he put it on the top of the cash register and it was lost. He said that he got one or more notices from the plaintiffs, and that among other notices was a written statement to the effect that if the premiums were not paid the policies would be canceled. The plaintiffs testified that

they sent statements, and that they had never sent any statements to the defendants to the effect that if the premiums were not paid the policy would be canceled.

From the testimony it appears that demand was made on the defendant Hunsucker for payment, and he said he would see his partner, English, and see about it. English says that demand was made on him after the time of the expiration of the policies, and he declined to pay; that they had never wanted the insurance, that they were not consulted about it, and they did not have the value of the goods in stock.

The plaintiff Tyson says that each policy was for $2,500. These statements are here made in view of the exceptions taken by the plaintiffs' attorneys, and without attempting to quote the statements verbatim or to set out the testimony at any great length. His Honor charged the jury as follows:

"Now, Mr. Foreman and gentlemen of the jury, you have here a controversy to decide between these insurance agents, acting, as it is alleged, as a partnership, and these two merchants, Hunsucker and English, trading as a partnership, under the firm name of Hunsucker & English. The claim is made on the part of the insurance agents that these people had a policy of insurance on their stock, and that when the policy expired they issued a new policy, and had it delivered to these merchants, and that the premiums on the two policies come to an amount which they are suing for, and they ask you, gentlemen, to give them a verdict in their favor against these two parties here. Now, gentlemen, you will see the difficulty that arises in such matters. No man can be required to pay for insurance on property when he had neither asked for insurance, nor had it delivered to him, nor accepted it, nor acquiesced in it; that is, agreed to it either directly or indirectly, and accepted it and kept it. The defendants come in here and claim that these two policies were never delivered to them at all; that if they were, that these insurance people kept on notifying them about the premium being due, and finally wrote them a notice that if the premiums were not paid that the policy would be canceled, and

that relying on that, they did not consider themselves any longer insured under this policy, and that they were not called upon to go and give absolute repudiation of the policy or to notify these folks that they declined to have the policy, but the mere fact that they did not pay for them, did not receive them, did not acquiesce in accepting them as policies on the property, that they are not bound to pay these agents. Now, there are complications in these questions.

"The first complication that arose in which the law comes to the assistance of these people, in these matters of putting things on you and then asking you to pay for them—you remember, most of you, how the newspapers and magazines used to do; if you had a subscription to a magazine and you had paid for it, and it expired, and they just kept right on sending it to you, and unless you took the trouble to take your time and sit down and return them the magazine, or write them a letter directing that they should not send it to you any more, they come in and hold you responsible for not having done that; it put the burden on you; if you were not prepared to renew your subscription to the newspaper, they could nevertheless keep on sending you the newspaper, and thus force on you some affirmative action to get it stopped, otherwise they would make you pay for it. Now, you know the law is changed on that; you have to pay in advance for a newspaper, and when your time expires they cannot keep on sending it to you and claim that you must notify them if you do not want it any longer. The law is that if they keep on sending it to you it is at their own risk, and you do not have to pay for it. It is up to them to stop sending it, and not involve you in a mass of correspondence, and sending back stuff to them, or notifying them you do not want their stuff any longer. Almost any man engaged in business can remember those times when it became a perfect nuisance; magazines were deluged on you after the subscription had ceased, and if you did not notify them that you did not want them any longer, then you were bound to pay for them.

"Now, the phase of that matter that arises here is the claim on the part of the insurance company that when the insurance policies expired on these men, that they kept right on renewing the insurance, giving out new policies, sending them to them, and that they were called upon to make some act of repudiation that they did not want it, that they should have notified the agents that they did not want the insurance any longer, and that they did not intend to pay for it. The contention is made by the insurance company that by their not having done anything on that line, not having notified them that they never intended to pay for it, or to collect anything from it if there was a loss, or that they did not want the insurance to continue. Now that is for you gentlemen to decide here. If it be so that the renewed policy was sent to these parties, and that it was received by them, whether it was up to them to go and notify the insurance company, or to send back the policy, or to do any act of that kind to show that they did not want the policy any more, or whether by their acquiescence and not doing anything you are going to hold them bound to pay the premiums on the policy which was sent to them without any special request on their part, is for you to decide. It is a question whether you are going to hold them on their nonaction in not acting to notify the insurance company, in not giving information to the insurance company, the one way or the other, that this policy they did not want, that they had no business to renew it, and take chances as to whether they paid for it, it is for you to say whether or not they ought to be bound to pay for it. Whether or not, if they did receive notice that the policy would no longer be of force if they failed to pay for it, whether the merchants had a right to rely on the idea that the policy was at an end, if you find that way.

"Now, there may be customs prevailing in such matters as where you have your property insured with a certain agent, and you do not look to the time when it is to terminate, but you rely on him to renew the policy for you, and after these renewals you go and pay for it, acquiesce in it,

and agree that you will go on and carry on that policy. That may be a general custom, or a custom among insurance people, but in each particular case, of course, no one is bound by custom unless it is shown in testimony that that has been brought home to him in some way, that he had some knowledge of the custom, or acquiesced in such custom, as that he would be bound if he did not return the policy or write the people or take some action to let them know he did not want the policy any more.

"So those are the questions you have to pass on. These plaintiffs who come in and claim this against these men—the burden is upon them to satisfy you by the greater weight of the testimony that the claims they are making have been made out by the greater weight of the testimony. The burden is upon the plaintiff. If the thing is just evenly balanced in your mind, why then the rule of law comes in and says that the plaintiff cannot recover unless he has the greater weight of the testimony on his side.

"Now, then, on that idea you write on the back of this complaint. We find for the plaintiff so much money, writing it out in words and not in figures; or we find for the defendants. Now, I have not the original complaint here."

Mr. Owens: "By consent we are using a copy."

The Court: "Write your verdict on the back of this paper, we find for the plaintiffs so much money, or we find for the defendants."

To this charge, the following exceptions were made:

"V. It is respectfully submitted that the presiding Judge committed error in charging the jury as follows:

" 'The first complication that arose in which the law comes to the assistance of these people, in these matters of putting things on you and then asking you to pay for them, you remember, most of you, how the newspapers and magazines used to do. If you had a subscription to a magazine and you had paid for it, and it expired, and they just kept right on sending it to you, and unless you took the trouble to take your time and sit down and return them the maga-

zine, or write them a letter directing that they should not send it to you any more, they come in and hold you responsible for not having done that. It put the burden on you; if you were not prepared to renew your subscription to the newspaper, they could nevertheless keep on sending you the newspaper, and thus force on you some affirmative action to get it stopped, otherwise they would make you pay for it. Now, you know the law is changed on that; you have to pay in advance for a newspaper, and when your time expires they cannot keep on sending it to you and claim that you must notify them if you do not want it any longer. The law is that if they keep on sending it to you, it is at their own risk, and you do not have to pay for it. It is up to them to stop sending it, and not involve you in a mass of correspondence, and sending back stuff to them, or notifying them you do not want their stuff any longer. Almost any man engaged in business can remember those times, when it became a perfect nuisance; magazines were deluged on you after the subscription had ceased, and if you did not notify them that you did not want them any longer, then you were bound to pay for them,'

—for the reason that the language was misleading and prejudicial, in that the only reasonable inference to be drawn from the illustration used by the presiding Judge and his language was that this rule applied in regard to insurance policies: 'The law is that if they keep on sending it to you that it is their own risk and that you do not have to pay for it. It is up to them to stop sending it and not involve you in a mass of correspondence in sending back stuff to them or notifying them you do not want their stuff any longer.' Whereas, it is respectfully submitted that when insurance policies expire and renewed policies are issued by a company and forwarded to the owner of property, it is necessary for the owner of the property to give notice to the insurance agents in a reasonable length of time that the policy is not desired, and to return the policy in a reasonable length of time with such notice.

"VI. It is further submitted that the presiding Judge committed error in charging the jury as follows:

" 'Now, the phase of that matter that arises here in the claim on the part of the insurance company that when the insurance policies expired on these men, that they kept right on renewing the insurance, giving out new policies, sending them to them, and that they were called upon to make some act of repudiation that they did not want it, that they should have notified the agents that they did not want the insurance any longer, and that they did not intend to pay for it. The contention is made by the insurance company that by their not having done anything on that line, not having notified them that they never intended to pay for it, or to collect anything from it if there was a loss, or that they did not want the insurance to continue. Now that is for you gentlemen to decide here. If it be so that the renewed policy was sent to these parties, and that it was received by them, whether it was up to them to go and notify the insurance company, or to send back the policy, or to do any act of that kind to show that they did not want the policy any more, or whether by their acquiescence and not doing anything you are going to hold them bound to pay the premiums on the policy which was sent to them without any special request on their part, is for you to decide. It is a question whether you are going to hold them on their nonaction in not acting to notify the insurance company, in not giving information to the insurance company, the one way or the other, that this policy they did not want, that they had no business to renew it, and take chances as to whether they paid for it, it is for you to say whether or not they ought to be bound to pay for it. Whether or not, if they did receive notice that the policy would no longer be of force if they failed to pay for it, whether the merchants had a right to rely on the idea that the policy was at an end, if you find that way,'

—for the reason that the presiding Judge, in the language

referred to, left it entirely for the jury to say whether or not, in their judgment, the defendants should pay for the insurance policy, and left to them the construction of the law entirely. Whereas, he should have charged the jury that if the defendants, having received the insurance policy, did not notify the agents in a reasonable length of time that the policy was not wanted or did not send the insurance policy back, or did not perform some act of that kind to show that they did not want the policy any more, that they were bound under the law to pay the premium, and furthermore, if the owners of the property acquiesced in the issuing of the policy and received the policy and held the same, that they were liable for the premium on the policy; whereas, the presiding Judge's charge left it for the jury to decide what the law is—that is, whether or not if one acquiesced and did nothing in such matters, tending to give to the insurance agents notice that the policy was not desired, that it was for the jury to decide whether or not the law would hold the owner of the property liable for the payment of the premium. Further, it was error for the presiding Judge to tell the jury that it was a question for them to determine whether or not they would hold the owners of the property on their nonaction in not acting to notify the insurance company, in not giving information to the insurance company one way or the other that they did not want this policy. That they had no business to renew it, and whether they are to pay for it is for you to say, whereas, as a matter of fact the Judge should have submitted to the jury the question of law. Was there nonaction on the part of the owners of the property? Did the owners of the property fail to notify the insurance company and fail to give information to the insurance company that they did not want the policy, and if they found that no such notice of action was taken on the part of the holders of the property, then the presiding Judge should have charged the jury that under the law the

27—S. C. R.—132.

owners of the property were liable for the premium on the insurance.

"VII. It is respectfully submitted that the presiding Judge committed error in charging the jury as follows:

" 'Now, there may be customs prevailing in such matters as where you have your property insured with a certain agent, and you do not look to the time when it is to terminate, but you rely on him to renew the policy for you, and after these renewals you go and pay for it, acquiesce in it, and agree that you will go on and carry on that policy. That may be a general custom, or a custom among insurance people, but in each particular case of course no one is bound by custom unless it is shown in testimony that that has been brought home to him in some way, that he had some knowledge of the custom, or acquiesced in such custom, as that he would be bound if he did not return the policy, or write the people, or take some action to let them know he did not want the policy any more.'

"Error being that the Judge in the first place committed error in not permitting testimony to show the custom, and, in the second place, that the Judge committed error in charging the jury that in the matter of custom no one is bound by custom unless it is shown in testimony that that has been brought home to him in some way, for the reason that the question of custom is a matter for the jury to determine how much weight the jury shall give testimony, and it is also admissible for the purpose of showing light upon the acts of the parties at the time of the transaction; for the further reason that it was not necessary for the owners of the property to know that there was a custom, and it was not necessary to establish this knowledge by testimony that if the owners of the property did not return the policy or write the people or take some action to let the people know that they did not want the policy any more that the owner of the property would not have to pay the premium, for the reason that the question of custom has nothing to do

at all with the transaction referred to, but the rule of law is that if the insurance policy is renewed and the policy forwarded to the owner of the property, it is not necessary to show the custom as to what the owner of the property does, but the law imposed the duty upon the owner of the property if he does not desire renewal of the policy to notify the insurance agent in a reasonable length of time."

Exceptions 1 and 2 must be sustained. "It is well settled that the known usages of a trade, business, or calling are presumed to enter into and form a part of contracts made in respect thereto, unless they are excepted or modified by agreement." *Burden v. Cotton Mills,* 104 S. C., 439; 89 S. E., 475. "So long as the general consent of mankind in business transactions gives recognition to a particular custom, there seems to be no good reason why Courts, when the question is presented in a commercial point of view, should adhere to a different rule. Judicial decisions should conform to the business habits of the people where it is to be applied. * * *". 3 R. C. L., pp. 855, 856.

The matter referred to in exception 3 is irrelevant, but harmless, and this exception is overruled.

The defendant, English, having testified that he had searched for the paper containing the alleged statement and could not find it, his testimony as to its alleged contents was admissible, and exception 4 is overruled.

While exception 5 is multifarious and contains more than one exception, it is sustained as to the first alleged error. So much of it as alleges error to the effect that when insurance policies expire and renewed policies are issued by a company and forwarded to the owner of the property it is necessary for the owner of the property to give notice to the insurance agent in a reasonable length of time that the policy is not desired and to return the policy in a reasonable length of time after such notice,

or else be bound as a matter of law, is not sustained. Whether the minds of the parties met, or whether the receiving and retention of a policy or policies would make a binding contract, would depend on all of the circumstances of each case. This exception, as made, cannot be sustained. There are questions of fact involved that the jury ought to pass upon; the alleged errors imputed to the Judge in this portion of his charge are not sustained; this part of the exception is overruled.

The matters complained of in the sixth and seventh exceptions involve questions of fact; the exceptions are overruled.

The judgment of the Circuit Court is reversed, and a new trial granted.

Reversed.

Mr. Chief Justice Gary and Messrs. Justice Watts, Cothran and Marion concur.